THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANDREW J. THOMSON,

    Plaintiff,

v.                                                                                                         No. 1:17-cv-00565-JCH-JFR

NATIONAL RAILROAD
PASSENGER CORPORATION,
*doing business as* AMTRAK,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Defendant National Railroad Passenger Corporation d/b/a Amtrak moves to strike a late filed report by Plaintiff's expert, Dr. Michael Roback. *See* ECF No. 123.

**I.    Background**

In this personal injury case, Mr. Thomson sues Amtrak for injuries he sustained in 2014 when the train he was riding in violently jolted. At the time, Mr. Thomson was using the restroom in his private sleeper cabin. Because the toilet was poorly attached, the jolt ripped it apart from the floor, projecting Mr. Thomson into the metal cabin door. He sustained serious injuries to his head, neck, back, and hands.

In August 2017, the Court created a case schedule, which – after some agreed upon extensions – included a February 28, 2018 deadline for Mr. Weathers to identify his expert witnesses. Mr. Thomson met this deadline, and identified Dr. Roback, a licensed physician and orthopedic surgeon, to provide opinions about orthopedic injuries to Mr. Thomson's head, neck, shoulder, and wrist. Dr. Roback conducted an orthopedic

evaluation of Mr. Thomson on January 4, 2018. Based on that evaluation, Dr. Roback concluded in his expert report that Mr. Thomson is "100% permanently disabled" and that the Amtrak related injury prevented him from doing activities required for gainful employment, such as standing, walking or sitting for a normal duration. ECF No. 97-2 at 33. He reported that before the train incident, Mr. Thomson was fully and independently able to clean his home, cook, do laundry, shop for groceries, and do home repairs and yard work. *Id*. at 11. Since the accident, though, Mr. Thomson cannot perform any of those activities without help. *See id*. Although Dr. Roback did identify Mr. Thomson's injuries and life limitations in light of the injuries, nowhere in Dr. Roback's report did he quantify Mr. Thomson's medical damages. A few months later, in June 2018, Amtrak deposed Dr. Roback in California about the content of his expert report.

Meanwhile, throughout the summer of 2018, the discovery deadline was pushed back numerous times, with a final deadline of November 8, 2018. The Court imposed a mid-November 2018 deadline for filing discovery-related and dispositive motions. Amtrak met those deadlines and moved to exclude two of Mr. Thomson's expert witnesses under *Daubert*[1] (one of which was Dr. Roback) and moved for summary judgment.

Jumping forward to August 7, 2019, the Court vacated the October 21, 2019 jury trial setting. Fourteen days later, on August 21, 2019 – roughly a year and a half after the expert witness disclosure deadline – Mr. Thomson served Amtrak with a supplemental orthopedic report by Dr. Roback. In that report, Dr. Roback, for the first time, came up

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

with hard numbers of Mr. Thomson's future medical damages. Mr. Thomson says that he disclosed these medical damages as part of his ongoing duty under the Federal Rules of Civil Procedure to "supplement or correct its disclosure … if the party learns that in some material respect the disclosure … is incomplete or incorrect, and if the additional or corrective information has not otherwise been known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). On September 10, 2019, Amtrak responded by moving to strike the supplement. Amtrak argues that Dr. Roback's medical damages are entirely new opinions on Amtrak's damages exposure. Amtrak concedes that Dr. Roback did give a "prior opinion that [Mr. Thomson] will incure [sic] future medical expenses," ECF No. 123, but argues that his new calculations "bolster an existing opinion or introduce a new opinion." ECF No. 132. If his calculations are admitted into evidence, Amtrak says it will have to get a rebuttal expert, do another deposition, and amend its already filed *Daubert* motion.

## II.     Standard of Review

Federal Rule of Civil Procedure 26(a)(2)(B) provides that an expert witness's report should contain "a complete statement of all opinions" the expert will express. Fed. R. Civ. P. 26(a)(2)(B). "The purpose of rule 26(a) expert disclosures is 'not only to identify the expert witness, but also 'to set forth the substance of the direct examination.'" *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, No. CIV 08-1101 JB/RLP, 2009 WL 3672502, at *3–4 (D.N.M. Sept. 29, 2009) (quoting *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953 (10th Cir.2002)). "Such disclosure is necessary to allow the opposing party a reasonable opportunity to prepare for effective cross

examination and perhaps arrange for expert testimony from other witnesses." *Jacobsen v. Deseret Book Co.,* 287 F.3d at 953 (citation and internal quotation marks omitted). "Pursuant to rule 26(e), a party is under a duty to supplement a rule 26(a)(2)(B) expert report 'if the party learns that in some material respect the information disclosed is incomplete and if the additional or corrective information has not otherwise been made known to the other parties....'" *Guidance Endodontics, LLC,* 2009 WL 3672502, at *3 (quoting Fed. R. Civ. P. 26(e)). "This duty extends to information included in expert reports and given during expert depositions." *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016) (citing Fed. R. Civ. P. 26(e)(2)).

However, "a party may not use a supplemental report to disclose information that should have been disclosed in the initial expert report, thereby avoiding the requirement for a timely and completely expert witness report." 6 Moore's Federal Practice § 26.131[2] (3d Ed.). Supplementation "means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Reinsdorf v. Skechers U.S.A.,* 922 F. Supp. 2d 866, 880 (C.D. Cal. 2013) (quotation omitted). Hence, "[a] party may not use the pretext of supplementation to reopen discovery, close gaps in their evidence, and essentially generate new expert reports." *Hall v. ConocoPhillips*, 248 F. Supp. 3d 1177, 1181 (W.D. Okla. 2017). "To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." *Beller ex rel. Beller v. United States,* 221 F.R.D. 696,

4

701 (D.N.M. 2003). Moreover, in the context of experts specifically, supplementation is not allowed "when the party's motive is to wholly rework [a] damages claim or change the substance of their contentions." *Capitol Justice LLC v. Wachovia Bank, N.A.*, 706 F. Supp. 2d 34, 39 (D.D.C. 2009) (citations and quotation marks omitted).

## III. Discussion

Applying these standards, a comparison of Dr. Roback's second report shows that it is not supplemental to his first one. First of all, Mr. Thomson points to no "incomplete" or "inaccurate" information in Dr. Roback's first report that his second one is meant to supplement. Of course, both reports share the same basic subject matter - Mr. Thomson's injuries. But their similarities end there. The second report's introduces a damages calculation that, on the low-end, put Amtrak's damages exposure in the quarter-of-a-million-dollars range. Second, Dr. Roback presumably based his damages conclusions on information he knew about Mr. Thomson at the time he examined him in January 2018. This is therefore not a case of correcting miscalculations, but instead introducing them for the first time. *Cf. Wachovia Bank, N.A.*, 706 F. Supp. 2d at 39 (expert's second report was supplemental where it did not "wholly rework" a damages claim, but only produced a more accurate report.) Thus, Dr. Roback's second report is not a supplement.

However, Mr. Thomson's failure to comply with Rule 26(e)'s strictures does not automatically mean that Dr. Roback's second report must be stricken, because courts focus on the prejudicial effect of the late disclosure. Under Fed. R. Civ. P. 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a

motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "[T]he determination of whether a Rule 26(a) [or (e)] violation is justified or harmless is entrusted to the broad discretion of the district court." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017) (citation omitted). The Rule 37(c)(1) inquiry "depends upon several factors that a district court should consider in exercising its discretion." *Id*. (citation omitted) (emphasis removed). These factors include: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

Because Mr. Thomson has not complied with the rules, he has disrupted this case's efficient management, especially since Mr. Thomson and his expert had numerous opportunities to disclose the damages calculation during the extended periods for discovery. Moreover, Amtrak is certainly right that the late disclosure deprived Amtrak of its ability to prepare for cross-examination and rebuttal of Dr. Roback and to decide whether to designate its own expert. However, Amtrak's request for the extreme sanction of excluding evidence is unwarranted. The Tenth Circuit has instructed district courts to consider an "array of other sanctions," *HCG Platinum, LLC*, 873 F.3d at 1203, in their arsenals before excluding evidence. An application of the *Woodworker's Supply* factors shows that all four factors weigh in favor of admitting the late report. First, that Mr. Thomson would seek medical damages could not have come as a surprise to Amtrak. His

complaint put Amtrak on notice that he sought compensation and past and future medical expenses. Second, the prejudice to Amtrak from the late disclosure can be cured. Amtrak can re-depose Dr. Roback, submit its own expert report if necessary, and renew its *Daubert* motion. Third, although re-opening expert discovery will have the effect of disrupting this case, no trial date is set, so the harm to Mr. Thomson of excluding his evidence outweighs any disruption to Amtrak. Fourth, the Court detects no bad-faith on Mr. Thomson's or his expert's part.

## IV. Conclusion

All in all, the *Woodworker's Supply* factors counsel in favor of admitting Mr. Thomson's late disclosure. However, to allay this ruling, Mr. Thomson will pay Dr. Roback's fee for re-deposing him. Amtrak will also be permitted to submit its own expert report and may renew its *Daubert* motion concerning Dr. Roback. The parties will meet with United States Magistrate Judge John F. Robbenhaar to reset expert discovery deadlines consistent with this Memorandum Opinion and Order.

**IT IS THEREFORE ORDERED that** Amtrak's Motion to Strike Untimely Supplemental Expert Report **[ECF No. 123]** is **DENIED**.

**IT IS SO ORDERED**.

_____
Senior United States District Court Judge