# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

ANDREW J. THOMSON,

    Plaintiff,

v.                                                         No. 1:17-cv-00565-JCH-JFR

NATIONAL RAILROAD
PASSENGER CORPORATION,
*doing business as* AMTRAK,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on: (i) the National Railroad Passenger Corporation d/b/a Amtrak's (Amtrak) Motion to Exclude the Testimony of Dr. Julia M. Johnson, EDD, LEP (ECF No. 87) and (ii) Amtrak's Motion to Strike the Declaration of Dr. Johnson, as moved for in Amtrak's Reply Brief in Support of its Motion to Exclude (ECF No. 105). The Court, having carefully considered the motions, briefs, evidence, and relevant law, grants in part and denies in part Amtrak's motion to exclude and denies Amtrak's motion to strike.

## I.    BACKGROUND

In May 2014, Plaintiff was a passenger on an Amtrak train that was passing through New Mexico. Pretrial Order, ECF No. 122, 3. Plaintiff was sitting down using the bathroom in his private cabin when the train violently jolted. *Id*. Because the toilet was improperly affixed, the force of the jolt allegedly projected both Plaintiff and the toilet shroud into the lavatory's metal door and rendered Plaintiff unconscious. *Id*; Compl., ECF No. 1, ¶¶ 6, 17, 19. Since the incident, Plaintiff has allegedly suffered from physical and mental injuries, including a traumatic brain injury and other serious injuries. *Id*. at ¶ 14.

In May 2017, Plaintiff filed a one-count complaint for negligence against Amtrak in the United States District Court for the District of New Mexico. Plaintiff alleges that jurisdiction arises based on the diversity of the parties' citizenship and amount in controversy under 28 U.S.C. § 1332 and that venue is proper in this District under 28 U.S.C. § 1391.

### A. Dr. Julia M. Johnson's Background and Experience

To investigate the diagnosis and cause of Plaintiff's injuries, Plaintiff retained the services of Dr. Julia M. Johnson, a licensed educational psychologist. Dr. Johnson holds a bachelor's and master's degree from the University of Redlands and a diplomate in school neuropsychology from Texas Women's University. Curriculum Vitae of Dr. Julia M. Johnson, ECF No. 95-1, 2 (Johnson CV). She has been an educational psychologist licensed by the State of California since 1994 and is currently an assistant professor at Azusa Pacific University and an expert witness on California's Board of Behavioral Sciences. *Id.* at 3; Decl. of Dr. Julia M. Johnson, ECF No. 95 ¶ 3 (Johnson Decl.). As an assistant professor, Dr. Johnson teaches students who are studying to be school psychologists or counselors and professional clinical counselors. Depo. of Dr. Julia M. Johnson, ECF No. 94-1, 8:23 – 9:4 (Johnson Depo.). Dr. Johnson has been a member of numerous professional societies, has published works, and has participated in professional workshops. Johnson CV at 3-4.

### B. Dr. Johnson's Expert Report[1]

Dr. Johnson generated an expert report based on a December 2017 psychoeducational evaluation of Plaintiff. Dr. Johnson's Expert Report, ECF No. 95-2, 2 (Johnson Report). Dr. Johnson wrote in the introductory section of her report that Plaintiff "sustained an injury from an

---

[1] In describing Dr. Johnson's report, the Court also presents information taken from a declaration submitted by Dr. Johnson that contextualizes her expert report. The Court will separately present the substantive portions of Dr. Johnson's declaration that Amtrak challenges in its motion to strike.

accident on an Amtrak train in 2014 which rendered him unconscious and was then diagnosed with [TBI and PTSD] as directly related to this accident." *Id*. She stated that her mission was to investigate Plaintiff's "current cognitive, social-emotional, behavioral, learning and vocational profile in relationship to the diagnosis of TBI and PTSD." *Id*. Her "sources of fact" included comprehensive medical and psychological records for Plaintiff from August 7, 1996 to August 24, 2017. *Id*. at 3.

To test Plaintiff's cognitive functioning, Dr. Johnson administered the Woodcock-Johnson IV Tests of Cognitive Abilities, which is a standardized neuropsychological test used by licensed psychologists. Johnson Decl. at ¶ 8. The test includes 18 tests for measuring general intellectual ability, broad and narrow cognitive abilities, academic domains, and related cognitive functioning. *Id*. at ¶ 9. The individual's scores are interpreted by comparing his results with those of a person of similar demographic background with expected levels of functioning. *Id.* at ¶ 8. Dr. Johnson attested that the Woodcock-Johnson test is well-respected and that "[t]he tests and examinations [she] performed … are commonly accepted, if not the gold-standard, in the field." *Id*. at ¶¶ 6, 9. Dr. Johnson stated that Magnetic Resonance Imaging (MRI) and Computed Tomography (CT) scans do not show the brain's functioning and therefore neuropsychological testing of the kind that she used tests the actual functioning of an individual's brain in various cognitive areas. *Id*. at ¶ 7.

Dr. Johnson concluded that Plaintiff's performance on the Woodcock-Johnson test showed that his cognitive abilities were significantly impaired. Johnson Report at 11. Citing a federal regulation implementing the Individual with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq*. (IDEA), Dr. Johnson concluded in the "summary and recommendations" section of her report that Plaintiff has "learning, vocational, daily living, and social-emotional challenges as

exhibited through the neuro-psychoeducational diagnosis of TBI." *Id.* at 15. Dr. Johnson cited the IDEA because her license in educational psychology allows her to diagnosis traumatic brain injury under IDEA standards.[2] Johnson Depo., ECF No. 87-2, 57:25-58:12. The doctor also referenced the Diagnostic and Statistical Manual of Mental Disorders (DSM) and opined that Plaintiff "meets diagnostic criteria for Generalized Anxiety Disorder as a characteristic subset and manifestation of the PTSD." Johnson Report at 15.

### C. Dr. Johnson's Deposition Testimony

During the August 2018 deposition of Dr. Johnson, Amtrak questioned the doctor about her authority to diagnose certain mental disorders. She explained that her license in educational psychology allows her to diagnose traumatic brain injuries and that she diagnoses patients under the IDEA in the "areas of eligibility and disability." Johnson Depo. at 87-2, 23:18 – 24:6; 58:1-2. Dr. Johnson does not perform full neuropsychological evaluations. *Id.* at 108:13-14. Rather, she performs neuropsychoeducational evaluations that examine a patient's cognitive, academic, social-emotional, behavioral, and language functioning within an educational and vocational context. *Id.* at 109:4-9. When Amtrak asked the doctor whether she diagnosed Plaintiff with PTSD and a TBI, or whether these diagnoses already exited in Plaintiff's medical history, *id.* at

---

[2] The regulation that Dr. Johnson quoted in her report defines a TBI as an:

> acquired injury to the brain caused by an external physical force, resulting in total or partial functional disability or psychosocial impairment, or both, that adversely affects a child's educational performance. Traumatic brain injury applies to open or closed head injuries resulting in impairments in one or more areas, such as cognition; language; memory; attention; reasoning; abstract thinking; judgment; problem-solving; sensory, perceptual, and motor abilities; psychosocial behavior; physical functions; information processing; and speech. Traumatic brain injury does not apply to brain injuries that are congenital or degenerative, or to brain injuries induced by birth trauma.

34 C.F.R. § 300.8(c)(12).

48:17 – 49:10, she answered that these were pre-existing diagnoses in Plaintiff's medical history. *Id*. at 50:6. She then "confirm[ed]" the prior TBI diagnosis, but she also independently diagnosed a TBI under IDEA standards. *Id.* at 49:2-6; 49:23 – 50:9.

Concerning her reference in her report to the DSM diagnostic criteria for PTSD, she explained that she is unqualified to, and thus did not, diagnose Plaintiff with PTSD. *Id*. at 57:11-17. Rather, she "describe[d] the symptoms of PTSD that [were] based under the diagnostic considerations of … [her] … neuropsychoeducational diagnosis of TBI" because the symptoms of TBI and PTSD are often aligned. *Id*. at 57:17-21. But she did not diagnose Plaintiff with PTSD. *Id*. at 48:23 – 49:1.

In addition to questioning Dr. Johnson about her diagnostic authority, Amtrak also questioned her about her methodology and her review of Plaintiff's prior medical records. For instance, Amtrak asked Dr. Johnson if her diagnosis of a TBI would look at a patient's prior loss of consciousness, MRI results, and medical records. *Id*. at 50:16-18; 50:20-22; 59:13-24. The doctor answered that an individual's previous loss of consciousness or negative MRI would not be factors that she would analyze, but that she would consider medical reports and a prior TBI diagnosis. *Id*. at 59:13-24; 77:22-24. She emphasized that diagnosis of a TBI would be based on "interviews, observations, different environmental settings," and "not just … standardized testing, not just with a medical record." *Id*. at 62:6-11. In addition, Amtrak asked the doctor why she did not include in her expert report that Plaintiff was previously diagnosed with post-concussive syndrome after a 2009 car accident. She answered that the diagnosis had been ameliorated and removed from his medical records by the time she interviewed him. *Id*. at 62:12-19; 64:14-18; 65:14-19.

According to Dr. Johnson, Plaintiff's medical record contained no other instances of head injuries other than those stemming from the May 26, 2014 Amtrak incident and the 2009 car wreck. *Id*. 130:23 – 131:6. To rebut this claim, Amtrak tendered at least five medical records, all generated before the May 2014 Amtrak incident, which noted traumatic brain injury in Plaintiff's file. For instance, in January 2014, Plaintiff visited a hospital for treatment of multiple problems, TBI among them. Amtrak's Ex. 6, ECF No. 88-6, 1. Almost two months later, in March 2014, Plaintiff sought treatment at a health center on three separate occasions, and each time his medical file noted TBI as a chronic condition. Amtrak's Ex. 7, ECF No. 88-7, 1-3; Ex. 8, ECF No. 88-8, 1; Ex. 9, ECF No. 88-9, 1-2; *see also* Amtrak's Ex. 12, ECF No. 88-12, 2 (same for May 13, 2014 visit). It is not clear if Amtrak questioned Dr. Johnson about these medical records during deposition. However, Amtrak tendered them to show that Plaintiff "complained of chronic TBI symptoms with great frequency in the year prior to the Amtrak incident." Amtrak's Reply at 6.

Amtrak also questioned Dr. Johnson about a neuropsychological evaluation of Plaintiff conducted by Dr. Christine M. Naber, whom Amtrak describes as an "independent" doctor. Amtrak's Mot. at 2. After evaluating Plaintiff in 2017, Dr. Naber reported that Plaintiff

> demonstrated a poor effort profile on every embedded and stand-alone measure of effort administered. [His] performance on validity testing was not typical of genuine memory/cognitive impairment, and he did not perform in a pattern consistent with an organic basis for his presentation.
>
> Ultimate diagnosis is complicated due to the failures on effort testing. There is no clear objective evidence to confirm a diagnosis of cognitive sequelae from prior head trauma or other neurologically-based cognitive disorder at the current time.
>
> Test findings cannot be considered a valid representation of [his] optimal functioning.
> …
>
> In addition, somatization was suggested by his profile.

6

Dr. Naber's Report, ECF No. 87-4, 2 (Naber Report). *Id*.

Dr. Naber's report was unavailable when Dr. Johnson generated her report, so Dr. Johnson did not consider Dr. Naber's analysis. Johnson Depo. at 53:19-22; 54:20-55:4. When Dr. Johnson did obtain Dr. Naber's report, however, nothing about Dr. Naber's report was significant for Dr. Johnson to amend her report in response. *Id*. at 53:23 – 54:2. During deposition, Dr. Johnson stated that she disagreed with the portion of Dr. Naber's report that "[t]here is no clear objective evidence to confirm a diagnosis of cognitive sequelae from prior head trauma." *Id*. 79:7-13. Dr. Johnson's interpreted this as an acknowledgment by Dr. Naber that "her data [was] inconclusive." *Id*. at 79:18-19.

### D. Dr. Johnson's Declaration

Attached to Plaintiff's opposition brief to Amtrak's *Daubert* motion was a declaration from Dr. Johnson in which she attested that it is "reasonably medically probable" that Amtrak *caused* cognitive defects consistent with TBI, PTSD, and anxiety disorder. Johnson Decl. ¶ 6. Dr. Johnson also stated that because Amtrak failed to ask her during deposition whether there was a "reasonably neuro-psychoeducational probability" that Amtrak caused Plaintiff's injuries, she was unable to give a responsive answer on the issue. *Id*. at ¶¶ 16-17.

## II.   DISCUSSION

### A. Amtrak's Motion to Strike Dr. Johnson's Declaration

In its reply brief to its *Daubert* motion, Amtrak filed a motion to strike the portion of Dr. Johnson's declaration in which she made a causation opinion that it is "reasonably medically probable" that Amtrak caused cognitive defects consistent with TBI, PTSD, and anxiety disorder. Johnson Decl. ¶ 6. Amtrak contends that there was "absolutely nothing in [her expert] report regarding causation," and that she generated this opinion for the first time in her

7

declaration. Amtrak's Reply at 3. Because Amtrak raised its motion to strike in its reply brief to its *Daubert* motion, the Court is without the benefit of full briefing on the issue.

### 1. Standard of Review

Amtrak contends that Plaintiff failed to timely comply with the expert disclosure requirements set forth in Federal Rule of Civil Procedure 26(a)(2) and therefore, pursuant to Federal Rule of Civil Procedure 37, moves to strike Dr. Johnson's declaration. Rule 37 provides, in relevant part, that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Woodworkers Supply, Inc. v. Principal Mut. Life. Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999) (citation omitted). Although a district court need not make explicit findings concerning the existence of substantial justification or the harmlessness of a failure to disclose, it should consider the following factors: (1) any prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure any prejudice; (3) the extent to which introducing the testimony would disrupt the trial; and (4) the violator's bad faith or willfulness. *Woodworkers Supply, Inc.,* 170 F.3d at 993.

### 2. Application

The first *Woodworkers Supply* factor examines the prejudice or surprise to Amtrak. After reviewing and comparing Dr. Johnson's expert report with her declaration, the Court agrees with Amtrak that Dr. Johnson's declaration statement that Amtrak caused Plaintiff's TBI, PTSD and Generalized Anxiety Disorder are new opinions. Even though Dr. Johnson claims to have set forth these opinions in her expert report, the Court's thorough review of her 16-page report does

not reveal causation opinions. Only one sentence in the "reason for referral" section of the report somewhat links the train accident to Plaintiff's injuries. Johnson Report at 2. In that section, the doctor wrote that Plaintiff "sustained an injury from an accident on an Amtrak train in 2014 … and was then diagnosed with [TBI and PTSD] as directly related to this accident." *Id*. However, she failed to identify the medical records or underlying data she reviewed to generate her opinion that Plaintiff was diagnosed with PTSD and TBI "as directly related to" the train accident. *Id*. Plaintiff's opposition brief likewise failed to identify the doctor's underlying data or point to medical records that endorsed her theory that the diagnoses were directly related to the train accident. The Court finds unpersuasive Dr. Johnson's statement that she did not answer deposition questions about causation because Amtrak did not pose such questions. The same could be leveled against Dr. Johnson: because she did not opine on causation in her expert report, Amtrak was not on notice to question her about the topic. Amtrak states that if the doctor's declaration is considered, "discovery will need to be reopened for an additional deposition and *Daubert* motion." Amtrak's Reply at 3. The Court agrees that reopening discovery is prejudicial to Amtrak, especially given that discovery has already been extended in this case. Therefore, the first *Woodworkers Supply* factor weighs in favor of excluding the declaration.

However, the second and third factors – the ability to cure the prejudice and the extent to which trial would be disrupted – weigh in favor of not excluding Dr. Johnson's declaration. Amtrak is correct that the only way to cure the prejudice to it is to re-depose Dr. Johnson, allow Amtrak to file another *Daubert* motion challenging Dr. Johnson's causation opinions, and designate an expert of its own should Amtrak see fit. Doing so would not implicate the third factor because this case is not currently set for trial. In fact, in December 2019 and January 2020 the Court reopened expert discovery for the parties to re-depose Plaintiff's damages expert about

9

calculations that the witness did not previously disclose. Re-deposition of the witness occurred on June 15, 2020 and other associated deadlines are approaching in July and August. Thus, the parties are actively litigating expert issues and no trial date is set, so the third *Woodworkers Supply* factor counsels against excluding the declaration.

The fourth factor – Plaintiff's bad-faith or willfulness – is a close call. Plaintiff now has a track record of making incomplete expert disclosures. For example, even though the Court previously reopened expert discovery rather than excluding Plaintiff's damages evidence, the Court noted that Plaintiff's conduct had "disrupted this case's efficient management, especially since [he] and his expert had numerous opportunities to disclose the damages calculation during the extended periods for discovery." ECF No. 139 at 6. Recognizing the prejudice to Amtrak of reopening expert discovery, the Court ordered Plaintiff to pay the expert witness's fee for re-deposing him and granted Amtrak leave to file its own expert report and renew its *Daubert* motion concerning the witness. Thus, because Plaintiff has a record of making incomplete expert disclosures, he is at the razor's edge of a finding of bad-faith.

A weighing of the *Woodworkers Supply* factors shows that only the first factor, prejudice to Amtrak, weighs in favor of excluding Dr. Johnson's causation opinions in her declaration. However, the second and third factors strongly weigh in favor of reopening expert discovery while the fourth factor is less conclusive. The Court thus reopens expert discovery for the limited purpose of deposing Dr. Johnson concerning her causation opinions and allowing Amtrak to submit its own expert report. Amtrak is also granted leave to amend its *Daubert* motion concerning Dr. Johnson and its summary judgment motion to address evidence concerning both of Plaintiff's proposed experts.[3] Finally, Plaintiff will pay Dr. Johnson's fee for re-deposing her.

---

[3] In its previous order reopening discovery, the Court did not grant Amtrak leave to amend its

10

Because the parties are currently litigating issues concerning Dr. Roback, the parties are ordered to re-depose Dr. Johnson in this same period to avoid yet more delay. Specifically, the re-deposition will occur within 60-days of entry of this Memorandum Opinion and Order, unless good cause is shown to modify this deadline. The parties will confer with the United States Magistrate Judge to set all other associated deadlines.

### B. Amtrak's *Daubert* Motion to Exclude Dr. Johnson's Testimony

Given the foregoing discussion, the Court reserves ruling on whether Dr. Johnson is competent to opine on causation. In the discussion that follows, the Court adjudicates only Dr. Johnson's expertise and methodology to diagnose Plaintiff's TBI and associated cognitive impairments and whether her testimony would be helpful to the trier of fact.

#### 1. Standard of Review

Although New Mexico's substantive law governs Plaintiff's negligence claim, the Court applies federal law to determine whether the proffered expert testimony is sufficiently reliable to submit to the jury. *See Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1193 (11th Cir. 2010). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods, and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

---

summary judgment motion. But given Plaintiff's overall record of late expert disclosures, the Court now affords Amtrak leave to amend its summary judgment motion to address Plaintiff's evidence concerning both Dr. Roback and Dr. Johnson.

Fed. R. Evid. 702. *See also 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006) (describing analysis as two-steps: (1) determining whether expert is qualified and (2) whether the expert's opinion is reliable under *Daubert* principles[4]). The touchstone of admissibility under Rule 702 is helpfulness to the trier of fact. *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).

      A court should consider the following non-exhaustive and non-dispositive factors in determining whether particular expert scientific testimony is reliable: whether the expert's technique or theory can and has been tested; the theory has been subject to peer review and publication; the known or potential rate of error of the technique or theory when applied; the existence and maintenance of standards and controls; and the general acceptance of the methodology in the relevant scientific community. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-50 (1999); *103 Investors*, 470 F.3d at 990 (citing *Daubert*, 509 U.S. at 593-94). The *Daubert* Court clarified that the focus must be solely on the principles and methodology, not on the conclusions they generate. *Daubert*, 509 U.S. at 595.

      To determine whether an expert opinion is admissible, the district court performs the following two-step analysis: (1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so qualified, the court must determine whether the expert's opinion is reliable under the principles set forth in *Daubert*. *See 103 Investors I, L.P.*, 470 F.3d at 990. In addition, the testimony must be helpful to the trier of fact. "In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony is within the juror's common knowledge and experience, and whether it will usurp the juror's role of

---

[4] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

evaluating a witness's credibility." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (citations and internal quotation marks omitted). "In doing so, courts must conduct a common-sense inquiry into whether a juror would be able to understand certain evidence without specialized knowledge." *Id.* (citations and internal quotation marks omitted).

Trial courts have equally broad discretion in both determining the reliability and admissibility of expert testimony and in deciding how to assess an expert's reliability, including what procedures to use in making that assessment. *See United States v. Velarde*, 214 F.3d 1204, 1208-09 (10th Cir. 2000). So long as the district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997). The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *See Nacchio*, 555 F.3d at 1251.[5]

### 2. Application

#### i. Expertise

Amtrak contends that Dr. Johnson's background in educational psychology disqualifies her because only a medical doctor or similar expert can diagnose a brain injury. According to Amtrak, "the cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion." Amtrak's Reply at 4 (quoting *Woods v. Brumlop*, 1962-NMSC-133, ¶ 15, 377 P.2d 520, 523) (italics and quotation marks omitted). Because "Dr. Johnson is not a medical doctor or neuropsychologist," Amtrak contends that "she is not

---

[5] The record evidence is sufficient to enable the Court to perform its gatekeeping duty. Because it is a party's burden to request an evidentiary hearing, and none was requested, the Court will rule on the motion based on the briefs and evidence in the record. *See United States v. Nacchio*, 555 F.3d 1234, 1253-56 (10th Cir. 2009) (explaining burden is on proponent of expert to request *Daubert* hearing).

qualified to conduct a medical diagnosis of Plaintiff's purported brain injury, particularly in light of Plaintiff's complex medical history." *Id.*; Amtrak's Mot. at 6.

However, it is unnecessary to decide whether the testimony of a medical doctor is required to diagnose Plaintiff's mental disorders. This is because Amtrak recognizes that a non-physician such as a neuropsychologist could render an opinion on mental health issues. *See* Amtrak's Reply at 8 (Amtrak stating that testimony from a neuropsychologist "at a minimum," is necessary.) Therefore, the parties agree that the diagnosis of mental disorders is not a field of expertise reserved exclusively to medical doctors. The Court then analyzes Amtrak's more specific contention that an educational psychologist is unqualified to render an expert opinion regarding the diagnosis of a mental disorder.

The Court rejects Amtrak's argument and concludes that Dr. Johnson is qualified to diagnose certain metal disorders. It is generally recognized in state and federal courts that "the provision of mental health care frequently occurs through other professionals who are educated and trained for the specific purpose of providing therapy to those with mental disorders." *Conley v. Commonwealth*, 273 Va. 554, 562, 643 S.E.2d 131, 135 (2007); *Bratt v. W. Air Lines*, 155 F.2d 850, 854 (10th Cir. 1946) ("The testimony of a country doctor concerning the sanity of his patient is as readily admissible as the testimony of the most renowned psychiatrist."). Dr. Johnson is a mental health care professional licensed by the State of California. California's statutory scheme specifically authorizes her to perform the "[d]iagnosis of psychological disorders related to academic learning processes," among other things. Cal. Bus. & Prof. Code § 4989.14(a)(2) (emphasis added). Amtrak is correct that Dr. Johnson is not a neuropsychologist. However, it would be inconsistent with *Daubert*'s "liberal approach taken in qualifying a witness as an expert" to conclude that her background disqualifies her given that she is statutorily

authorized to make certain psychological diagnoses. *Farris v. Intel Corp.*, 493 F. Supp. 2d 1174, 1182 (D.N.M. 2007).

In addition, Dr. Johnson has the skill, knowledge, and experience regarding the pertinent subject matter to qualify as an expert. As noted earlier, Dr. Johnson has been a licensed educational psychologist for years. She has accumulated academic and clinical experience in the area of neuropsychoeducational evaluations. She has also been a member of numerous professional societies, published works, participated in professional workshops, and has been appointed by the Governor of California to California's behavioral sciences board. Moreover, Dr. Johnson testified that she is qualified by her education to diagnose traumatic brain injury. This constitutes sufficient "knowledge, skill, experience, training, or education" to offer an expert opinion regarding the diagnosis of traumatic brain injury. Fed. R. Evid. 702.

But to the extent that Plaintiff tenders Dr. Johnson to testify as an expert regarding the diagnosis of PTSD, her testimony is excluded. At deposition, she expressly testified that she was unqualified to diagnose PTSD under the DSM. She said that she could instead "describe the symptoms of PTSD that [were] based under the diagnostic considerations of … [her] … neuropsychoeducational diagnosis of TBI" because the symptoms of TBI and PTSD are often aligned. Johnson Depo. at 57:17-21. While Dr. Johnson may permissibly testify as an expert about Plaintiff's psychological and emotional conditions, she may not express a diagnostic opinion about Plaintiff's alleged PTSD under the DSM. By her own admission, she is not qualified to make such a diagnosis.

Regarding the doctor's authority to diagnose Generalized Anxiety Disorder, the record is less developed compared to the record of Dr. Johnson's authority to diagnose TBI or PTSD. The parties pointed to no deposition testimony of Amtrak scrutinizing the doctor about her authority

15

to diagnose Generalized Anxiety Disorder. All the Court has in its possession is the doctor's opinion in her expert report that Plaintiff "me[t] [the] diagnostic criteria for Generalized Anxiety Disorder as a characteristic subset and manifestation of the PTSD." Johnson Report at 15. Even though the record concerning the doctor's qualifications to diagnose Generalized Anxiety Disorder is less developed, the Court keeps in mind the liberal approach in qualifying a witness and assumes that Dr. Johnson has the training and education to render an expert opinion regarding the diagnosis of Generalized Anxiety Disorder. However, to the extent that Dr. Johnson describes Generalized Anxiety Disorder as a "manifestation of the PTSD," the doctor's testimony is excluded. Given that she is unqualified to diagnose PTSD, the doctor may not opine about manifestations of PTSD.

In summary, Dr. Johnson is qualified to testify as an expert regarding the diagnosis of TBI and Generalized Anxiety Disorder. She is unqualified, however, to testify about a diagnosis of PTSD and manifestations of PTSD. Again, this ruling applies only to the doctor's qualifications to diagnose TBI and Generalized Anxiety Disorder and does not implicate her qualifications to draw a causal relationship between those diagnoses and Plaintiff's accident.

### ii. Reliability

The Court concludes that sufficient facts and data support Dr. Johnson's diagnoses of TBI and Generalized Anxiety Disorder. Dr. Johnson administered the Woodcock-Johnson test, which is a standardized neuropsychological test used by a licensed psychologist. Dr. Johnson used her skill and knowledge to administer the test to Plaintiff, and then compared his results to that of a person of similar demographic background with expected levels of cognitive functioning. According to Dr. Johnson, neuropsychological testing of this kind tests the brain's actual functioning that would not be revealed in an MRI and CT scan and the test is well-

accepted in the field of psychology. Dr. Johnson's "sources of fact" included Plaintiff's comprehensive medical and psychological records from 1996 to 2017. Johnson Report at 3. As part of her methodology, Dr. Johnson permissibly drew on Plaintiff's own version of events. *See Tormenia v. First Inv'rs Realty Co.*, 251 F.3d 128, 135 (3d Cir. 2000) ("Rule 702 does not require that experts … eschew reliance on a plaintiff's account of factual events that the experts themselves did not observe.").

Furthermore, the doctor's conclusion that Plaintiff has "learning, vocational, daily living, and social-emotional challenges as exhibited through the neuro-psychoeducational diagnosis of TBI," was tethered to a regulation defining TBI under the IDEA and thus the doctor used a methodology by referring to objective diagnostic criteria. Johnson Report at 15. Regarding Generalized Anxiety Disorder, Dr. Johnson referenced the DSM in drawing her conclusion that Plaintiff "me[t] [the] diagnostic criteria for Generalized Anxiety Disorder." *Id*. Thus, Dr. Johnson's methodology is properly grounded in objective criteria that is publicly available.

Amtrak does not point to weaknesses in the Woodcock-Johnson test or Dr. Johnson's testing methods. Instead, Amtrak repeatedly claims that Dr. Johnson's opinions are unreliable because they are "predicated exclusively on an interview with Plaintiff, not on medical records." Amtrak's Mot. at 2. But Dr. Johnson's testimony on which Amtrak relies shows that Amtrak and Dr. Johnson have conflicting ideas about which of Plaintiff's medical records are important, something that goes to the weight, not admissibility, of her testimony. For instance, while the doctor agreed that her report lacked "any chronology or … medical history," concerning Plaintiff, this was because such material was "not important." Johnson Depo. at 48:2-8. Notably, she stated that she did review Plaintiff's psychological records, *see id.* at 46:20-25, and her "sources of fact" included Plaintiff's medical and psychological records spanning 21 years.

17

Johnson Report at 3. This evidence is more than sufficient to counter Amtrak's claim that Dr. Johnson did not evaluate Plaintiff's medical records. Any perceived defects in Dr. Johnson's review of Plaintiff's medical records go to the weight of her testimony, not its admissibility, and may be properly explored in cross-examination of the witness.

Amtrak also objects that there is a lack of "fit" between Dr. Johnson's diagnosis and Plaintiff's injury because she diagnoses TBI under IDEA standards. As Amtrak says, "this is not an IDEA case." Amtrak's Mot. at 9. Indeed, the doctor's declaration and the statute defining her authority note that she is permitted to diagnose psychological disorders "related to academic learning processes." Johnson Decl. at ¶ 3(b); Cal. Bus. & Prof. Code § 4989.14(a)(2). It is also true that Plaintiff is an adult in his 50s and not a schoolchild requiring educational support. Nonetheless, Dr. Johnson's declaration indicates that the Woodcock-Johnson test is not confined to the educational context or reserved for younger examinees. She stated that the test "is a well respected method of testing cognitive abilities within the field of psychology, has been used since the late 1970s, and allows for detailed analysis of multiple areas of cognitive function." Johnson Decl. at ¶ 9. This evidence indicates that the doctor's methodology is not confined to the educational context. Although Plaintiff ultimately carries the burden of proof to show that Dr. Johnson's testing method is reliable, it is worth noting that Amtrak submitted no rebuttal evidence casting doubt on quality of the Woodcock-Johnson test. The Court therefore concludes that Dr. Johnson's diagnostic opinions will help jurors understand neuropsychological evidence and therefore she may testify as an expert concerning certain diagnoses.

### III.   CONCLUSION

**IT IS THEREFORE ORDERED that** Defendant National Railroad Passenger Corporation d/b/a Amtrak's Motion to Exclude the Testimony of Dr. Julia Johnson (**ECF No.**

**87**) is **GRANTED in part** and **DENIED in part**. Dr. Johnson may testify as an expert regarding the diagnosis of Traumatic Brain Injury and Generalized Anxiety Disorder. She may not testify, however, about the diagnosis of Post-Traumatic Stress Disorder. The Court **RESERVES RULING** on the admissibility of Dr. Johnson's causations opinions;

**IT IS FURTHER ORDERED that** the parties will re-depose Dr. Johnson within **60-DAYS** of entry of this Memorandum Opinion and Order, unless good cause is shown to modify this deadline. The parties will meet with United States Magistrate Judge John F. Robbenhaar to set expert discovery deadlines concerning Amtrak's time to file an expert report. Deadlines for Amtrak to amend its *Daubert* motion concerning Dr. Johnson and to amend its summary judgment motion will also be established. Given the global Coronavirus pandemic and the need to keep in-person contact to a minimum, the parties are encouraged to conduct depositions remotely using technologies that allow all participants to be physically separate and allow for real-time exhibit viewing;

**IT IS FURTHER ORDERED that** Plaintiff will pay for Dr. Johnson's re-deposition fee, including any incidental costs such as travel, etc.;

**IT IS FINALLY ORDERED that** Amtrak's Motion to Strike the Declaration of Dr. Johnson, as moved for in Amtrak's Reply Brief in Support of its *Daubert* Motion (**ECF No. 105**) is **DENIED**.

**IT IS SO ORDERED**.

_____
Judith C. Herrera
Senior United States District Judge